```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
UNITED STATES OF AMERICA,                                              :
                                                                       :
                                                                       :
          -v-                                                          :
                                                                       :   03 Cr. 734 (JPC)
                                                                       :
LUYEN DAO NGUYEN,                                                      :   OPINION AND ORDER
                                                                       :
                         Defendant.                                    :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Defendant Luyen Dao Nguyen, a federal inmate serving a 400-month sentence for participating in a racketeering enterprise and for murdering two people, has moved *pro se* for compassionate release from prison—or, in the alternative, for reduction of his sentence—under 18 U.S.C. § 3582(c)(1)(a). In his motion, Nguyen contends that the ongoing risks associated with COVID-19, various changes in the law, his need to care for his elderly father, and his demonstrated rehabilitation constitute "extraordinary and compelling reasons" warranting the requested reduction in his sentence. He also urges that the sentencing factors under 18 U.S.C. § 3553(a) further counsel in favor of a reduction. The Government opposes Nguyen's request. For the reasons that follow, the Court denies Nguyen's motion.

### I. Background

**A.    Offense Conduct[1]**

Nguyen was a close associate of Sui Min Ma, who ran a heroin distribution enterprise

---

[1] The following description of Nguyen's offense conduct is based on the Presentence Investigation Report submitted to the Honorable Deborah A. Batts prior to Nguyen's sentencing and provided under seal by the Government in its opposition to Nguyen's motion. Dkt. 182 ("Opposition"), Exh. A ("PSR").

starting in at least 1993. PSR ¶¶ 35-36. From 1993 to 1995, Nguyen, as Ma's "assassin and enforcer," assisted Ma in his criminal activities, including the distribution of heroin. *Id.* ¶¶ 36, 56.

As relayed by a cooperating witness, in Spring 1994, Ma's supplier, who was based in China, asked Ma to murder the supplier's business partner, who was based in Toronto, Canada. *Id.* ¶¶ 32, 37. Apparently, the supplier had wanted to avoid a drug debt that he owed this partner by having him killed. *Id.* ¶ 37. Looking to prove that he and his crew were capable of violence, Ma appointed Nguyen, among other members of his crew, to carry out the killing. *Id.*

Accordingly, in Spring and Summer 1994, a group of Ma's associates took several trips to Toronto to locate their intended victim, who was involved in a seafood business there. *Id.* ¶¶ 32, 38. Ma meanwhile worked with other organization members (who would later become cooperating witnesses) to obtain firearms. *Id.* ¶¶ 39, 41. At Ma's instruction, Nguyen and other associates traveled from California to New York, and from there they drove up to Toronto, equipped with those firearms. *Id.* ¶¶ 40, 55. Upon their arrival at the seafood business, Nguyen and another associate, Paul Cai, both armed with handguns, shot and killed two people later identified as Kwan Kin Ming and Yip Pak Yin. *Id.* ¶ 42. Two days later, Ma informed the cooperating witness and other organization members that Nguyen and Cai had murdered the wrong people. *Id.* ¶ 43. Indeed, Mr. Ming and Mr. Yin had no connection to the supplier or to his heroin distribution network. *Id.* ¶ 42.

**B.    Procedural History**

Nguyen was arrested on June 3, 2003, *id.* ¶ 46, and indicted on June 18, 2003, Dkt. 4. Superseding indictments followed and, on June 16, 2004, the grand jury returned the operative indictment charging Nguyen with a conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count One), and with murder while engaged in a narcotics

offense punishable under 21 U.S.C. § 841(b)(1)(A), and aiding and abetting the same, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 (Count Four). Dkts. 4, 9, 15, 25; *see also* PSR ¶¶ 2 (Count One), 23 (Count Four). On October 16, 2006, at a hearing before Judge Batts, Nguyen pleaded guilty to both Counts, allocuting specifically to "heroin trafficking. . . . [that] involved more than a kilogram of heroin" and both the murder conspiracy and actual murders of Mr. Ming and Mr. Yin. Opposition, Exh. F ("Guilty Plea Tr.") at 17:6-20.

At sentencing on November 7, 2011, Judge Batts made two corrections to the Presentence Investigation Report regarding the offense level and the criminal history calculations, but otherwise adopted the report's factual recitations. *See* Opposition, Exh. B ("Sentencing Tr.") at 4:8-20, 18:23-19:9. Judge Batts arrived at an offense level of 40 with a Criminal History Category of V, resulting in an advisory Guidelines custodial range of 360 months to life, which Judge Batts considered alongside the mandatory minimum of twenty years' imprisonment under 21 U.S.C. § 848(e)(1)(A). *Id.* at 14:9-16, 18:23-19:9. During the sentencing hearing, Judge Batts acknowledged that Nguyen had endured a "harrowing life experience and deprivation as a child," that he had been taken in by the Ma organization when he was eighteen, that he had murdered the two victims at Ma's behest when he was just twenty-two years old, and that he had endeavored to lead a law-abiding life in the several years preceding his 2003 arrest. *Id.* at 19:10-18, 20:1-3. But stressing the severity of the offense conduct and Nguyen's extensive criminal history—and considering that the other shooter, Cai, whose criminal history included only one drunk driving arrest, had been sentenced to 360 months' imprisonment—Judge Batts determined that a below-Guidelines sentence was inappropriate. *Id.* at 19:19-25, 20:1-18. Judge Batts thus sentenced Nguyen to 400 months' imprisonment, followed by five years of supervised release. *Id.* at 20:18-24.

Nguyen appealed his sentence, arguing that his sentence was both substantively and procedurally unreasonable. *United States v. Nguyen*, 508 F. App'x 39, 40 (2d Cir. 2013). In January 2013, the Second Circuit affirmed the sentence. *Id.* A little over a year later, Nguyen filed a *pro se* habeas petition alleging ineffective assistance of counsel. Dkt. 163. Judge Batts denied the petition and declined to issue a certificate of appealability. Dkt. 168. Nguyen's appeal from that denial was dismissed by the Second Circuit in June 2016. Dkts. 170, 172.

Nguyen filed the instant motion on November 14, 2022, Dkt. 173 ("Motion"), and the case was transferred to the undersigned three days later, Dkt. 174. The Government filed its opposition on December 23, 2022, Dkt. 182, and Nguyen replied on March 6, 2023, Dkt. 185.

Having served approximately twenty years of his sentence, Nguyen is scheduled for release on April 25, 2032. *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Dec. 2, 2023). He is currently incarcerated at Federal Correctional Institution ("FCI") Mendota in California. *Id.*

## II.  Legal Standard

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a defendant who has exhausted his or her administrative remedies may subsequently move a federal district court for compassionate release or reduction of his or her sentence. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021) ("Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the [Bureau of Prisons ("BOP")] to seek such release on their behalf."). That statute provides, in pertinent part, that the court "may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant

4

such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Because Nguyen is proceeding *pro se*, the Court construes his motion liberally, interpreting it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). But, as the moving party, Nguyen still bears the burden of demonstrating his entitlement to early release. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *Phillibert*, 557 F. Supp. 3d at 459. In other words, Nguyen must show that: (1) he has exhausted his administrative remedies; (2) extraordinary and compelling reasons warrant reduction of his sentence; and (3) the applicable sentencing factors, on balance, do not cut against such reduction.

### III. Discussion

The Government does not contest Nguyen's exhaustion of his administrative remedies. Opposition at 4 n.2; *see also id.*, Exh. D (Nguyen's administrative request for a sentence reduction). The Court thus assesses Nguyen's proffered "extraordinary and compelling reasons" and weighs the applicable factors under section 3553(a).

**A.     Extraordinary and Compelling Reasons**

Congress did not define extraordinary and compelling reasons for a sentence reduction. Rather, it instructed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Before November 1, 2023, that guidance—directed at motions brought by the BOP—outlined three categories of extraordinary and compelling reasons (the defendant's medical condition, the defendant's age, and family

circumstances), in addition to providing a "catch-all" provision that covered, as determined by the Director of BOP, the existence of an extraordinary and compelling reason other than, or in combination with, the reasons identified. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,255-56 (effective Nov. 1, 2023). In deciding defendant-initiated motions, courts were permitted to consider the Commission's guidance, but—given that the commentary, as written, applied only to BOP-initiated motions—courts were not required to do so. *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("[I]f a compassionate release motion is not brought by the BOP Director, Guideline § 1B1.13 does not, by its own terms, apply to it."). Instead, courts were free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *Id.* at 237.

In April 2023, the Sentencing Commission proposed amendments to section 1B1.13, to, *inter alia*, update its policy statement to encompass motions brought by defendants; these amendments went into effect on November 1, 2023. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended policy statement expands the categories of circumstances considered "extraordinary and compelling," instructing courts to consider not only the defendant's medical circumstances, age, and family circumstances, but also whether the defendant is or has been a victim of abuse or has served an unusually long sentence. U.S.S.G. §§ 1B1.13(b)(1)-(4), (6). It also adds specific guidance on the permissible consideration of non-retroactive changes in the law, *id.* § 1B1.13(c), and it provides that the defendant's rehabilitation may be considered as a factor in the "extraordinary and compelling" inquiry, although it cannot serve as the sole basis for reduction, *id.* § 1B1.13(d). Finally, the amended policy statement has a "catch-all" provision allowing courts to consider any other circumstance or combination of circumstances that, either themselves or

together with the reasons identified in subsection (b)(1) through (b)(4), rise to the level of gravity of those identified reasons.  *Id.* § 1B1.13(b)(5).[2]

Nguyen argues that his release is warranted because: (1) COVID-19 present a serious risk to his health; (2) he would receive a shorter sentence if he were sentenced today; (3) his elderly father needs his assistance; and (4) he has demonstrated significant rehabilitation.  Although the Court is sympathetic to certain of Nguyen's arguments and commends Nguyen for his rehabilitative efforts, the Court finds that Nguyen's circumstances do not amount to "extraordinary and compelling reasons" meriting a sentence reduction.

### 1.  COVID-19

Turning first to Nguyen's COVID-19-related contentions, section 1B1.13 now provides that "extraordinary and compelling reasons exist" if there is the combination of the following factors regarding a defendant's medical circumstances:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).  None of these factors is present here.

---

[2] The Court need not determine whether *Brooker* or the current version of section 1B1.13 governs the analysis of Nguyen's defendant-initiated motion.  Under the terms most favorable to Nguyen under either standard, the outcome would be the same: he has not offered extraordinary and compelling reasons warranting a sentencing reduction, for reasons that follow.  *Cf. United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *2, 3 (S.D.N.Y. Nov. 21, 2023) (considering the Commission's amended guidance in assessing a compassionate release motion brought by a defendant in June 2023).

First, Nguyen has not shown that there is an ongoing outbreak of COVID-19 at FCI Mendota. In his November 2022 motion, Nguyen claimed that the rampant spread of new strains of the coronavirus and the BOP's "fail[ure] to take the proper steps to suppress the infection in its facilities" resulted in "outbreaks of COVID-19 and several deaths" at the facility. Motion at 4. Contrary to these bare assertions, however, at the time of the Government's submission just over a month later, there were *no* active cases of COVID-19 among the inmates at FCI Mendota (more than 91% of whom were vaccinated) and only two active cases among the facility's staff. Opp. at 3 (citing BOP data as of December 23, 2022). And, as of this writing, there are no active COVID-19 cases among either the inmates or the staff at FCI Mendota. *See* Federal Bureau of Prisons, *BOP COVID-19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Dec. 2, 2023). Nor is COVID-19 an ongoing public health emergency at the federal level or in the state of California. *See* Centers for Disease Control and Prevention, *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html (Sept. 12, 2023) (explaining that May 11, 2023 marked the end of the federal COVID-19 public health emergency declaration); Office of Governor Gavin Newsom, *Governor Newsom Marks End of California's COVID-19 State of Emergency*, https://www.gov.ca.gov/2023/02/28/governor-newsom-marks-end-of-californias-covid-19-state-of-emergency/ (Feb. 28, 2023) (announcing a proclamation terminating California's State of Emergency).

Second, Nguyen, who is in his early fifties, presents no personal health factors increasing his risk of COVID-19-related complications. *Cf. United States v. Mason*, No. 96 Cr. 126 (JFK), 2021 WL 37576, at *3 (S.D.N.Y. Jan. 5, 2021) (recognizing that the Centers for Disease Control and Prevention has warned that COVID-19 is especially risky for individuals aged sixty-five and

8

older). In fact, Nguyen's risks of contracting the virus and of suffering severe health consequences as a result are greatly reduced because he has been fully vaccinated since May 26, 2021, when he received a single dose of the Janssen vaccine. *See* Opposition, Exh. C at 20 (medical record indicating administration of Janssen vaccine); Motion at 82, 84, 86 (same); *cf.* World Health Organization, *The Janssen Ad26.COV2.S COVID-19 vaccine: What you need to know*, https://www.who.int/news-room/feature-stories/detail/the-j-j-covid-19-vaccine-what-you-need-to-know (last visited Dec. 2, 2023) (listing single dose efficacy of Janssen vaccine as 72%). Nguyen claims that his psoriasis and arthritis render him especially vulnerable to COVID-19-related complications, Motion at 7, but neither of these conditions has been recognized by the Centers for Disease Control and Prevention as exacerbating such risks. *See* Centers for Disease Control and Prevention, *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals* (Feb. 9, 2023), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. Moreover, the BOP is providing Nguyen with ongoing medical care for these conditions, *see, e.g.*, Opposition, Exh. C at 2-3, 15-16; *id.*, Exh. E at 76-81, and Nguyen has not indicated that his medical care is inadequate. *Cf. United States v. Hafen*, No. 19 CR. 637 (AKH), 2022 WL 2104468, at *4 (S.D.N.Y. June 10, 2022) (denying compassionate release to an inmate who continued to receive medical care sufficient to address then-existing health issues); *United States v. Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (acknowledging the serious nature of the defendant's medical conditions but denying compassionate release where conditions remained stable and managed in the BOP facility).[3]

---

[3] In addition to the risk to his health, Nguyen appears to argue that COVID-19 has made the conditions of his confinement particularly burdensome. *See* Motion at 7 (discussing "harsh

Given Nguyen's age, his vaccination status, the conditions at FCI Mendota, the nature of Nguyen's underlying health conditions, and the ongoing care he receives for those conditions, any risk that the COVID-19 virus poses to Nguyen's health does not rise to the level of an extraordinary and compelling reason to reduce his sentence.

### 2. Changes in the Law

Next, Nguyen argues that he would receive a far shorter sentence if he were sentenced today, and that this theoretical disparity counsels in favor of a reduction in his sentence. Motion at 2-3. But the developments in the law that he cites have no bearing on the sentence he received in 2011.

For example, Nguyen invokes the Supreme Court's seminal 2005 decision, *United States v. Booker,* 543 U.S. 220 (2005), which made the previously mandatory United States Sentencing Guidelines advisory. *See* Motion at 2. Judge Batts sentenced Nguyen after *Booker*, however, and plainly considered the Guidelines range as advisory, expressly offering her reasons for declining to vary below the calculated range. *See* Sentencing Tr. at 20:3-12 ("The Court has considered the relevant sections of the *advisory* sentencing guidelines . . . and finds that the *advisory* sentencing guideline range . . . is appropriate for the crimes of conviction, and therefore, there is no reason to depart from the *advisory* sentencing guideline range, nor is a non[-]guidelines sentence warranted based on the [section 3553(a)] factors." (emphases added)).

---

institutional COVID-19 lockdowns [and] lack of outdoor activities and fresh air"). "[G]eneralized statements about the conditions of confinement do not constitute compelling reasons for compassionate release," however. *United States v. Ayala*, No. 21 Cr. 111 (NRB), 2022 WL 2334041, at *2 (S.D.N.Y. June 27, 2022) (citation omitted); *see also United States v. Raposo*, 98 Cr. 185 (JPC), 2023 WL 142786, at *6 (S.D.N.Y. Jan. 10, 2023) ("Moreover, finding 'extraordinary and compelling reasons' based on generally-shared and widespread burdens arising from the COVID-19 pandemic—burdens which since have been significantly relieved—would undermine the limited intended scope of compassionate release.").

10

Nguyen also contends that he is entitled to a sentence reduction pursuant to "the First Step Acts' [sic] changes to Section 841(a) and 846," Motion at 7, which the Court construes as references to 21 U.S.C. §§ 841(b) and 848(e), as well as possibly 18 U.S.C. § 1962(d). *Cf. id.* at 13 (Nguyen's administrative request for compassionate release in which he mentions "18 U.S.C. 848(e)(1)(A)," "18 U.S.C. 1962," and "the First Step Act"). But that Act did not modify the sentencing framework for any of Nguyen's statutes of conviction.

As relevant here, the First Step Act granted district courts the discretion to reduce a sentence previously imposed for a "covered offense," which the statute, in turn, defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 Act . . . that was committed before August 3, 2010." First Step Act § 404(a)-(b), Pub. L. No. 115-391, 132 Stat. 5194, 5222. Turning to the Fair Sentencing Act, section 2 increased the threshold quantities of crack cocaine required for the imposition of certain mandatory minimum penalties in 21 U.S.C. § 841(b), and section 3 eliminated the mandatory minimum sentence for simple possession of crack cocaine in 21 U.S.C. § 844(a) altogether. Pub. L. No. 111-220, 124 Stat. 2372, 2372; *accord United States v. Davis*, 961 F.3d 181, 184, 185 n.2 (2d Cir. 2020); *United States v. Young*, 998 F.3d 43, 52 (2d Cir. 2021). Neither of Nguyen's offenses of conviction is impacted by the First Step Act.

Nguyen pleaded guilty to two Counts. Count One was a conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d), with the racketeering acts being a heroin distribution conspiracy and the July 20, 1994 double murder in Toronto, including the planning of that murder in New York. *See* PSR ¶¶ 2, 8-13, 26; Guilty Plea Tr. at 7:17-10:12, 16:18-17:18:4. The First Step Act, however, had no impact on 18 U.S.C. § 1962, including with

respect to the sentencing framework and grouping analysis under the Sentencing Guidelines for such an offense.

Count Four was murder while engaged in a conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin, and aiding and abetting the same, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. While an element of this offense is that Nguyen was "engag[ed] in an offense punishment under section 841(b)(1)(A) of" Title 21, Nguyen's underlying drug distribution did not involve the possession or distribution of crack cocaine. Rather, he pleaded guilty to distributing one kilogram and more of *heroin*, in violation of 21 U.S.C. § 841(b)(1)(A)(i), *see* Guilty Plea Tr. at 9:9-10, 17:7-10, which is not a "covered offense" under Section 404 of the First Step Act. *Cf. Young*, 998 F.3d at 53 (explaining that under the defendant's flawed interpretation "a person convicted of distributing heroin in violation of 21 U.S.C. § 841(b)(1)(A)(i) could move for resentencing, even though the Fair Sentencing Act was passed '[t]o restore fairness to Federal cocaine sentencing' and modified only the statutory penalties for crack offenses").[4] Nor did the First Step Act affect the twenty-year mandatory minimum sentence under 21 U.S.C. § 848(e)(1)(A). *See United States v. Fletcher*, 997 F.3d 95, 97 (2d Cir. 2021) ("Sections 2 and 3 of the Fair Sentencing Act make no mention of § 848(e)(1)(A), and they did not alter the statutory penalty range of 20 years to life in prison (or death) for drug-related murder.").

Thus, Nguyen's convictions for violating 18 U.S.C. § 1962(d) and for violating 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 have not been impacted by the First Step Act. As a result,

---

[4] Although the Presentence Investigation Report does not specify the subsection under 21 U.S.C. § 841(b)(1)(A) to which Nguyen pleaded guilty, his guilty plea allocution and the report's factual recitations, which Judge Batts adopted, unequivocally described the trafficking of one kilogram and more of heroin, thereby implicating 21 U.S.C. § 841(b)(1)(A)(i). *See* Guilty Plea Tr. at 17:7-10; PSR ¶ 36.

Nguyen cannot establish an extraordinary and compelling reason warranting a sentence reduction based on the enactment of the First Step Act.[5]

### 3. Family Circumstances

Next, Nguyen urges that his need to care for his elderly father, who is in his late eighties and is "dealing with deteriorating medical issues," constitutes an extraordinary and compelling reason for his release. Motion at 7. It is true that section 1B1.13 now provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason for sentence reduction. U.S.S.G. § 1B1.13(b)(3)(C). But Nguyen has not demonstrated—nor has he even claimed—that he is the only available caregiver for his father. *Cf. United States v. Lindsey*, No. 13 Cr. 271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) ("[C]ourts generally require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions before concluding that an extraordinary and compelling reason has been established." (internal quotation marks omitted)). And it appears that Nguyen has "children of his

---

[5] Nguyen also offers a slew of cases involving defendants who were sentenced for "stacked" 18 U.S.C. § 924(c) offenses and defendants who received sentencing enhancements for "felony drug offenses" under 21 U.S.C. § 851. Motion at 2-3; *see, e.g.*, *United States v. Price*, 496 F. Supp. 3d 83, 87-88 (D.D.C. 2020) (finding that the defendant demonstrated extraordinary and compelling circumstances where he was sentenced to a mandatory minimum of life in prison pursuant to 21 U.S.C. § 851 following his third narcotics conviction whereas, following passage of the First Step Act, an individual who committed his crimes would face a mandatory minimum of fifteen years in prison); *United States v. Jones*, 482 F. Supp. 3d 969, 979 (N.D. Cal. 2020) (reducing the defendant's sentence because Section 403 of the First Step Act eliminated the "stacking" of convictions under 18 U.S.C. § 924(c) that resulted in the defendant's pre-*Booker* sentence to a mandatory minimum of twenty-five years); *United States v. Quinn*, 467 F. Supp. 3d 824, 826, 827-31 (N.D. Cal. 2020) (finding that the defendant demonstrated extraordinary and compelling circumstances where he was sentenced to 562 months due to stacking of Section 924(c) offenses which First Step Act eliminated, and would have been sentenced to roughly 204 months if sentenced today). But, once again, the First Step Act's alterations to the sentencing frameworks for offenses that are unrelated to Nguyen's conviction and sentence cannot form an extraordinary and compelling reason meriting a sentence reduction for him.

own." Motion at 7.  Nguyen provides no reason why those children cannot themselves care for Nguyen's father.  Accordingly, while the Court is sympathetic to both Nguyen and his father, it cannot find that Nguyen has offered an extraordinary and compelling reason based on his family circumstances.  *Cf. United States v. John*, No. 15 Cr. 208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (explaining that even under *Brooker*, "[section] 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly 'extraordinary and compelling'" and that "[b]eing separated from [one's] wife and children and unavailable to care for aging parents are but two of the sad and inevitable consequences of incarceration").

### 4. Rehabilitation

Finally, Nguyen urges that his efforts at rehabilitation warrant a reduction in his sentence. Nguyen explains that he has been "attending school, taking college courses, earning multiple certificates and licenses of various vocational skills through classes offered at different facilities," and that he "helps other inmates achieve their GED."  Motion at 6.  And he has provided ample documentary evidence in support of his avid participation in FCI Mendota's programming.  *Id.* at 14-79.  He also states that the has not received an incident report—or at least not a "serious write-up"—in the past nine years.  *Id.* at 6.

The Government does not refute Nguyen's ongoing commitment to his education and to assisting his fellow inmates, *see* Opposition at 10-11, and the Court certainly commends Nguyen for those endeavors.  But Nguyen's disciplinary record, submitted by the Government, shows several infractions from the last decade, including possession of a dangerous weapon, possession of gambling paraphernalia, possession of a cellphone, and organization of a gambling pool.  *See* Opposition, Exh. G (Nguyen's BOP disciplinary record).

14

Setting aside Nguyen's less-than-flawless disciplinary record, Nguyen cannot, in any event, rely on rehabilitation alone as a basis to justify reduction of his sentence. 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *accord* U.S.S.G. § 1B1.13(d) (explaining that rehabilitation of the defendant while serving the sentence may be considered *only in combination* with other circumstances in determining whether a sentence reduction is warranted). And given the Court's findings that Nguyen's medical and familial circumstances, as well as Nguyen's cited developments in the law, do not constitute extraordinary and compelling reasons, even evidence of complete rehabilitation would not suffice. *Cf. Raposo*, 2023 WL 142786, at *7 (explaining that rehabilitation alone cannot constitute an extraordinary and compelling reason for a sentence reduction, even where the defendant's twenty-seven-year disciplinary record was "nearly faultless" and the defendant had "spent significant time and energy bettering himself and the prison community[,] resulting in his receipt of an impressive number of academic and professional commendations").

Accordingly, the Court finds that Nguyen has failed to demonstrate extraordinary and compelling reasons meriting a reduction in his sentence.[6]

## B.     Section 3553(a) Factors

Moreover, even had Nguyen established such "extraordinary and compelling reasons," the Court would still deny his motion upon weighing the applicable section 3553(a) factors. In

---

[6] Nguyen also appears to question the extraterritorial application of 21 U.S.C. § 848(e)(1)(A). *See, e.g.*, Motion at 6 ("The charge Mr. Nguyen is accused of happened in Canada, throughout all the studying and reading he is still puzzled by the jurisdiction issue of this case"). That argument, which attacks the validity of Nguyen's underlying conviction, however, is not properly raised in a motion for sentence reduction; rather, "such arguments are properly raised on direct appeal or collateral review pursuant to 28 U.S.C. § 2255." *See United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022) ("A defendant cannot evade this collateral review structure by attacking the validity of his conviction through § 3582.").

particular, the "nature and circumstances" of Nguyen's offense, 18 U.S.C. § 3553(a)(1); the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense," *id.* § 3553(a)(2)(A), and "to afford adequate deterrence," *id.* § 3553(a)(2)(B); and the need to avoid unwanted sentencing disparities, *id.* § 3553(a)(6), counsel against reducing Nguyen's sentence.

As an initial matter, the Court is not unsympathetic to the many traumatic experiences Nguyen endured as a child, which Nguyen and his counsel described at length at his sentencing and which Judge Batts meaningfully considered. *See* Sentencing Tr. at 5:8-7:19, 8:4-14:8, 19:13-18. At a young age, Nguyen was separated from his mother during his family's flight from Vietnam to the United States, *id.* at 10:6-10; after a tortuous journey by boat, Nguyen settled in the United States only to stay with a family member who sexually abused him, *id.* at 10:15-22, 11:1-4; and his father, who at the time was a physically abusive alcoholic, kicked Nguyen out of the house, leaving Nguyen to fend for himself when he was just seventeen or eighteen years old, *id.* at 11:4-7, 18:3-6. It was around this time when Nguyen began committing the crimes that make up his extensive criminal history, *id.* at 18:3-6, and was taken in by the Ma organization, which fed and sheltered him, *id.* at 11:12-13, 19:14-18. The Court further recognizes that in the years immediately preceding his 2003 arrest, Nguyen attempted to distance himself from the Ma organization and lead a law-abiding life, *id.* at 18:9-21, 20:1-3, and that in the last two decades of his incarceration, Nguyen has taken significant steps towards his rehabilitation, *see supra* III.A.4. Moreover, the Court accepts as sincere Nguyen's expressions of remorse and acceptance of responsibility in his February 16, 2023 letter to the Court. Dkt. 185.

But ultimately, the atrocity of Nguyen's underlying criminal conduct, especially his role in the Toronto double murder, is not sufficiently offset by these otherwise compelling mitigating

16

circumstances. For several years, Nguyen—as an "assassin and enforcer"—actively participated in a violent, heroin trafficking enterprise. PSR ¶¶ 36, 56. In support of this enterprise, Nguyen traveled from California to New York, and then from New York to Toronto, to murder an individual who Nguyen believed owed money to the organization. *Id.* ¶¶ 37-42. Although this murder plot involved the efforts and coordination of a number of organization members, Nguyen was one of two people who carried out the actual killing. *Id.* ¶ 42; *see also* Guilty Plea Tr. at 17:18-20 (Nguyen allocuting to having "fired [his] gun at two men"); Sentencing Tr. at 17:16-18 (prosecutor describing Cai as "the other shooter"). And, as the Government explained at Nguyen's sentencing, this was a "particularly gruesome murder"—with "pools of blood" everywhere, "[m]ultiple gunshots to the[] victims," and "then a shot to the head just to make sure they were dead." Sentencing Tr. at 16:18-25. Adding to the tragedy, multiple organization members had raised concerns (right outside the seafood business just before the double murder) that the "right people" were not inside, but Nguyen nonetheless carried on—murdering two innocent people, Mr. Ming and Mr. Yin, who were indeed the wrong targets and had no ties to any drug organization. *Id.* at 17:3-12.

Accordingly, Judge Batts's within-Guidelines sentence of 400 months' imprisonment appropriately reflects the severity of Nguyen's criminal conduct, justly punishes the offense, promotes respect for the law, and achieves adequate general deterrence for similar conduct. Modification of Nguyen's sentence would undercut those aims.

Indeed, reduction of Nguyen's sentence would be all the more inappropriate in light of his co-conspirator's sentence. As discussed above, *supra* I.B, Cai, the second shooter in the Toronto double murder, was sentenced to 360 months' imprisonment. Sentencing Tr. at 17:16-23. Significantly, Cai had only one drunk driving arrest on his record. *Id.* Nguyen's criminal history,

on the other hand, includes juvenile adjudications for possession of cocaine, trespass, and car theft, as well as adult criminal convictions for possession of a short-barreled rifle, first-degree burglary, and possession of counterfeit currency.  PSR ¶¶ 89-104.  Granting compassionate release at this juncture would create an unwarranted sentencing disparity, with Nguyen serving a lighter sentence than Cai.  *See* 18 U.S.C. § 3553(a)(6).

On balance, the applicable section 3553(a) factors thus militate against reducing Nguyen's sentence.

### IV.  Conclusion

For the above reasons, Nguyen's motion for reduction of his sentence is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 173 and to mail a copy of this Opinion and Order to Mr. Nguyen.

SO ORDERED.

Dated: December 4, 2023
       New York, New York

JOHN P. CRONAN
United States District Judge